UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Mary K. Flood, Michele M. Wolf, Gary R. Flood, Jeffrey D. Flood, and Amy S. Mullen<br><br>   Plaintiffs,<br><br>v.<br><br>Fairmount Santrol Holdings, Inc., Fairmount Santrol, Inc., and Shakopee Sand, LLC,,<br><br>   Defendants. | No. 15cv3080 (PAM/SER)<br><br><br><br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on Defendants' Motion to Dismiss and to Compel Arbitration. For the reasons that follow, the Motion is granted.

**BACKGROUND**

Plaintiffs are a mother and her children, who in 1981 sold their family farm in Scott County to a mining company. (Compl. ¶ 13.) The family initially retained homestead and farming rights to the property, and also secured a royalty interest in the sand mined from the property. (Id. ¶¶ 14-15.) The homestead and farming rights ended in 1999, but the family's royalty interest continued. (Id. ¶ 15, 21.) Until 2013, the family received royalty payments apparently without incident, although the company that mined the property changed names multiple times as it was sold and/or merged with other mining companies. (E.g., id. ¶¶ 18-20.)

In 2012, a new company, Great Plains Sand, LLC, contacted Plaintiffs about commercially mining the property. (Id. ¶ 25.) (It is not clear from the Complaint whether the property was being mined by another company at this time or whether mining on the property had stopped.) Great Plains merged with Defendant Shakopee Sand, LLC in June 2013, as the company and Plaintiffs were entering into an agreement that was either new or an amendment of Plaintiffs' most recent agreement with another company. (Again, the Complaint's allegations do not make this distinction clear.) Shakopee Sand is a wholly owned subsidiary of Defendant Fairmount Santrol, Inc.; Fairmount Santrol is the LLC's only member. Fairmount Santrol is in turn wholly owned by Defendant Fairmount Santrol Holdings, Inc. At some point during the events giving rise to the Complaint, Shakopee Sand changed its name to Jordan Sand, but the parties continue to refer to the entity as Shakopee Sand and the Court will do the same.

In the 2013 agreement, Shakopee Sand agreed to pay Plaintiffs a royalty of either "[t]he greater of (i) $0.90 per ton," "adjusted upwards or downwards [to correspond to] the percentage change in the United States Producer Price Index for Industrial Commodities for the month two months prior to the month in which payment is due from that in effect as of the date this Agreement is signed;" or "(ii) 2% of net maximum sales price to purchasers of Product (FOB plant)." (Compl. ¶ 47; see also Wind Aff. Ex. A (Docket No. 14-1) ¶ 3.a.) Plaintiffs contend that they "were repeatedly assured, both verbally and in writing, that . . . the $0.90 per ton number represented an absolute floor." (Compl. ¶ 48.)

Shortly after signing the contract, Plaintiffs suspected that Shakopee Sand was not complying with the contract's terms. Specifically, Plaintiffs allege both that they were paid less than $0.90 per ton on some occasions or that the variable rate calculated was not based on the maximum price purchasers paid for the sand. (Id. ¶¶ 49; 62-63.)

Plaintiffs conducted an audit pursuant to the terms of the agreement. They claim that Shakopee Sand and the Fairmount entities failed to give them all the documents they needed for that audit. (Id. ¶ 99.) But the auditor ultimately determined that Shakopee Sand had underpaid Plaintiffs by more than $675,000. (Id. ¶ 134.)

Plaintiffs brought this lawsuit in Scott County, raising a multitude of claims: breach of contract against Shakopee Sand alone, tortious interference against the Fairmount entities, and against all Defendants claims for civil theft, civil RICO, unjust enrichment, civil conspiracy, and claims for an injunction and a declaratory judgment. Defendants removed the case to federal court in July 2015.

Defendants now ask the Court to dismiss all of Plaintiffs' claims. First, they argue that all claims against Shakopee Sand must be dismissed because the parties' agreement requires the submission of all such disputes to arbitration. Defendants contend that dismissal, rather than the usual stay, is appropriate because arbitration will resolve all disputes between Plaintiffs and Shakopee Sand. Next, Defendants argue that the Court lacks personal jurisdiction over the Fairmount entities. Finally, Defendants contend that, if there is personal jurisdiction over those entities in Minnesota, Plaintiffs' claims against them fail to state claims for which relief can be granted.

Plaintiffs do not deny that the arbitration clause mandates arbitration of their claims against Shakopee Sand, although they ask that the Court stay the remaining claims pending that arbitration rather than dismissing the lawsuit.  Plaintiffs also do not address Defendants' arguments with respect to their claims for civil RICO, civil conspiracy, unjust enrichment, and injunction, thus conceding that those claims must be dismissed.  Plaintiffs only dispute the lack of personal jurisdiction and Defendants' arguments regarding tortious interference and civil theft.

**DISCUSSION**

**A.     Personal Jurisdiction**

The Court can exercise personal jurisdiction over a nonresident defendant if (1) Minnesota's long-arm statute, Minn. Stat. § 543.19, is satisfied; and (2) the exercise of personal jurisdiction does not offend due process.  Stanton v. St. Jude Med., Inc., 340 F.3d 690, 693 (8th Cir. 2003).  Because Minnesota's long-arm statute extends the personal jurisdiction of Minnesota courts as far as due process allows, In re Minn. Asbestos Litig., 552 N.W.2d 242, 246 (Minn. 1996), the Court need only evaluate whether the exercise of personal jurisdiction comports with the requirements of due process.  Guinness Import Co. v. Mark VII Distribs., Inc., 153 F.3d 607, 614 (8th Cir. 1998).  It is a plaintiff's burden to demonstrate, "by a prima facie showing, that personal jurisdiction exists."  Stevens v. Redwing, 146 F.3d 538, 543 (8th Cir. 1998).

Due process requires that the defendant have "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citation omitted). Sufficient minimum contacts exist when the "defendant's conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). There must be some act by which the defendant "purposefully avails itself of the privileges of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). In contrast, contacts that are merely random, fortuitous, attenuated, or that are the result of "unilateral activity of another party or a third person" will not support personal jurisdiction. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985) (citation omitted).

To determine the sufficiency of a defendant's conduct with the forum state, the Court examines five factors: (1) the nature and quality of the contacts; (2) the quantity of the contacts; (3) the relation between the contacts and the action; (4) the forum state's interest in the litigation; and (5) the convenience of the parties. Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 648 (8th Cir. 2003). The third factor distinguishes between general and specific jurisdiction. Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc., 65 F.3d 1427, 1432 (8th Cir. 1995). General jurisdiction is present whenever a defendant's contacts with the forum state are so "continuous and systematic" that it may be sued in the forum over any controversy, independent of whether the cause of action has any relationship to the

defendant's activities within the state. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 416 (1984). Specific jurisdiction refers to jurisdiction over causes of action arising from or related to the defendant's actions within the forum state. Burger King, 471 U.S. at 472-73. The fourth and fifth factors are secondary to the analysis. Minn. Min. & Mfg. Co. v. Nippon Carbide Indus. Co., Inc., 65 F.3d 694, 697 (8th Cir. 1995). Plaintiffs here seem to be arguing that the Fairmount entities are subject both to the Court's general and specific jurisdiction.

As Plaintiffs recognize, a parent corporation is not considered to be doing business in a state merely because it has a wholly owned subsidiary in that state. (Pls.' Opp'n Mem. at 7 (quoting Bielicki v. Empire Stevedoring Co., 741 F. Supp. 758, 761 (D. Minn. 1990) (Doty, J.)).) To determine whether jurisdiction is appropriate, the Court must decide whether Minnesota law would allow the piercing of the corporate veil. See Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 649 (8th Cir. 2003) (noting that "a court's assertion of jurisdiction [over a parent corporation on the basis of a subsidiary's presence in the state] is contingent on the ability of the plaintiffs to pierce the corporate veil" under the relevant state's law). The test in Minnesota for piercing the corporate veil is set forth in Victoria Elevator Co. v. Meriden Grain Co., 283 N.W.2d 5090 (Minn. 1979). The factors a court must examine when making the veil-piercing determination include:

> insufficient capitalization for purposes of corporate undertaking, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation at time of transaction in question, siphoning of funds by dominant shareholder, nonfunctioning of other officers and directors, absence of corporate records, and existence of corporation as merely facade for individual dealings.

283 N.W.2d at 512. Plaintiffs do not address these factors, instead relying on a test from the Seventh Circuit that is not, as Defendants point out, based on Minnesota law. In any event, it is clear that there is no basis for piercing the corporate veil here. Plaintiffs have not established that the Fairmount entities used Shakopee Sand as a corporate ruse in any way, that any of these companies was insufficiently capitalized or insolvent, or any of the other elements under Victoria Elevator. In the absence of piercing the corporate veil, there is likely no personal jurisdiction over the Fairmount entities.

Plaintiffs raise two arguments in favor of the exercise of personal jurisdiction. First, they contend that the Complaint raises claims against the Fairmount entities for their own conduct. Second, Plaintiffs argue that the Fairmount entities describe the Shakopee Sand mine as "our" property in their Securities and Exchange Commission, and the ownership of property in Minnesota subjects them to this Court's jurisdiction.

The Fairmount entities' activities in Minnesota may subject them to this Court's jurisdiction. A company that "aim[s] its conduct at Minnesota, intend[s] to induce commercial activity in Minnesota, [and] Minnesota [is] . . . the focal point for the alleged wrongdoing" may be subject to specific personal jurisdiction in Minnesota. Jacobs Trading, LLC v. Ningbo Hicon Int'l Indus. Co., 872 F. Supp. 2d 838, 847 (D. Minn. 2012) (Ericksen,

J.). And while ownership of property does not, by itself, establish a court's jurisdiction over the property owner, "it may suggest the presence of other ties" that make the exercise of jurisdiction appropriate. Rush v. Savchuk, 444 U.S. 320, 328 (1980). But the Complaint is fatally short on details regarding what activities the Fairmount entities carried out in Minnesota, aside from allegedly directing their subsidiary to underpay Plaintiffs. The allegations pled do not establish that this Court can constitutionally exercise jurisdiction over the Fairmount entities. Plaintiffs' claims against those entities will be dismissed without prejudice.

**B.     Arbitration**

The arbitration provision provides that "a dispute between the parties hereto which cannot be resolved by mutual agreement . . . shall be submitted to final and binding arbitration by the American Arbitration Association . . . ." (Wind Aff. Ex. A (Docket No. 14-1) ¶ 10.) As noted, Plaintiffs do not deny that they are required to arbitrate their claims against Shakopee Sand. They ask the Court to allow them to continue to pursue their claims against the Fairmount entities through litigation, or in the alternative that the Court stay the entire case until the arbitration concludes. (Pls.' Opp'n Mem. at 2.) Defendants, on the other hand, argue that all of Plaintiffs' claims against Shakopee Sand should be dismissed, rather than stayed.

The FAA provides that a district court "shall stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. When the arbitration will dispose of the entire controversy, however, a dismissal rather than a stay may be appropriate. See Green v. SuperShuttle Int'l, Inc., 653 F.3d 766, 770 (8th Cir. 2011) (reversing district court's dismissal of case when "it is not clear all of the contested issues between the parties will be resolved by arbitration"). Plaintiffs do not dispute that the arbitration will dispose of all of Plaintiffs' claims against Shakopee Sand. Rather, they seek a stay only of their claims against the Fairmount entities. But the Court lacks juridiction over those claims, and thus a dismissal without prejudice of the claims against Shakopee Sand is warranted.

C.   **Motion to Dismiss for Failure to State a Claim**

Because the Court lacks juridiction over the Fairmount entities, it is without jurisdiction to determine whether Plaintiffs' claims comport with Rule 12.

**CONCLUSION**

The allegations in the Complaint do not establish this Court's jurisdiction over the Fairmount entities, and Plaintiffs' claims against Shakopee Sand must be submitted to arbitration. Accordingly, **IT IS HEREBY ORDERED that**:

1. Defendants' Motion to Dismiss (Docket No. 10) is **GRANTED**;
2. Plaintiffs' claims against Defendant Shakopee Sand, LLC are referred to arbitration under the terms of the parties' contract, and those claims are **DISMISSED without prejudice**; and

3. Plaintiffs' claims against Defendants Fairmount Santrol, Inc. and Fairmount Santrol Holdings, Inc. are **DISMISSED without prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: <u>October 5, 2015</u>

<u>*s/ Paul A. Magnuson*</u>
Paul A. Magnuson
United States District Court Judge